

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

13 CV 3246

-------------------------------------------------------------X

INDIAN HARBOR INSURANCE COMPANY,   :

              Plaintiff,   :

         -against-   :

CSAC EXCESS INSURANCE AUTHORITY and :
INSURANCE COMPANY OF THE STATE OF   :
PENNSYLVANIA,   :

            Defendant.   :

-------------------------------------------------------------X

Case No.

**COMPLAINT FOR DECLARATORY**
**RELIEF**

RECEIVED
MAY 1 4 2013
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff, INDIAN HARBOR INSURANCE COMPANY, by and through its attorneys,

Duane Morris LLP, as and for its Complaint against Defendants, CSAC EXCESS INSURANCE

AUTHORITY and INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, hereby

alleges as follows:

<u>**NATURE OF ACTION**</u>

    1.     This is an action for declaratory judgment pursuant to 28 U.S.C. section 2201 and

28 U.S.C. section 2202, to determine the rights and duties, if any, of Indian Harbor Insurance

Company to: (1) CSAC Excess Insurance Authority ("CSAC-EIA"), which is the First Named

Insured under the Indian Harbor policy and a risk pool that provides certain coverage to the City

of San Diego (among others); and (2) Insurance Company of the State of Pennsylvania

("ICSOP"), which provides reinsurance and excess coverage to the City of San Diego.   Such

relief is requested due to the existence of an actual controversy between the parties.  Indian

Harbor Insurance Company contends an actual controversy exists between it, on the one hand,

and CSAC-EIA and ICSOP, on the other hand, as to Indian Harbor Insurance Company's

obligations to CSAC-EIA and ICSOP with respect to the defense and indemnity of the City of San Diego in certain underlying actions. Specifically, CSAC-EIA has demanded that Indian Harbor Insurance Company settle the liability of the City of San Diego in the lawsuit entitled, *The Grande North at Santa Fe Place Homeowners Assn. v. Bosa Development California, Inc., et al.*, Case No. 37-2009-00098057, San Diego Superior Court, California, and CSAC-EIA has stated that it may seek recoupment from Indian Harbor of any amounts CSAC-EIA eventually may pay for the City's defense and indemnity. Indian Harbor disputes that it has any obligation to the City of San Diego related to such action. Indian Harbor is informed and believes that ICSOP joins CSAC-EIA in these allegations. Additionally, CSAC-EIA or ICSOP may likewise demand that Indian Harbor Insurance Company settle the liability of the City of San Diego in the following similar lawsuits: *235 On Market Homeowners Assn. v. 235 Market LLC et al.*, Case No. 37-2011-00097434, San Diego Superior Court, California; and *Element Owners Assn. v. Centex Homes et al.,* Case No. 37-2009-00087185, San Diego Superior Court, California, or may seek recoupment of any amounts either eventually may pay for the City of San Diego's defense and indemnity. Indian Harbor also disputes that it has any obligation to the City of San Diego related to these actions. Accordingly, Indian Harbor Insurance Company seeks a declaration that it has no obligation to CSAC-EIA and ICSOP with respect to the defense and indemnity of the City of San Diego in these three lawsuits.

## JURISDICTION AND VENUE

2.      Plaintiff Indian Harbor Insurance Company ("Indian Harbor") is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of North Dakota with its principal place of business located in Stamford, Connecticut.

3.      Indian Harbor is informed and believes that Defendant CSAC Excess Insurance Authority is a risk sharing pool of California public agencies created pursuant to California law with its principal place of business located in Folsom, California.

4.      Indian Harbor is informed and believes that Defendant Insurance Company of the State of Pennsylvania is, and at all times mentioned herein was, a corporation incorporated under the laws of Pennsylvania with its principal place of business located in New York, New York.

5.      Indian Harbor is not a citizen of the same state as either CSAC-EIA or ICSOP, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees, and costs.  Therefore, this Court has jurisdiction pursuant to 28 U.S.C. section 1332.

6.      This Court furthermore has jurisdiction pursuant to the following provisions of the Indian Harbor policy and also has jurisdiction over ICSOP because ICSOP's principal place of business is New York, New York and/or it conducts business here:

    **K.**    **Jurisdiction and Venue** -- It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company and the INSURED will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction.  Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to the United States District Court.

    **L.**    **Choice of Law** -- All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules.)

7.      This court is a proper venue for this action under 28 U.S.C. section 1391 because CSAC-EIA is subject to personal jurisdiction in this District by agreement of the parties pursuant to the terms of the Policy cited above and ICSOP has its principal place of business in New York, New York and/or conducts business here.

## GENERAL ALLEGATIONS

### The Indian Harbor Policy

8.      Indian Harbor issued claims-made and reported pollution and remediation legal liability coverage to the California State Association of Counties pursuant to policy PEC002076401, effective July 1, 2009 to July 1, 2012 ("IHIC Policy"). (See Exhibit A attached.)

9.      Pursuant to Endorsement #029 of the IHIC Policy, the First Named Insured was amended to read as follows: CSAC Excess Insurance Authority and its member agencies as endorsed (Program II Members).

10.     The IHIC Policy contains limits of liability of $10,000,000 each POLLUTION CONDITION, $50,000,000 aggregate liability, and a $500,000 Self-Insured Retention applicable to each POLLUTION CONDITION.  Per Endorsement #025, the IHIC Policy contains a sublimit of $10,000,000 each POLLUTION CONDITION, and a $10,000,000 total Aggregate Liability shall apply to each INSURED.

11.     Endorsement #005 to the IHIC Policy lists the City as an Additional Named Insured.

12.     Coverage A of the IHIC Policy for Pollution Legal Liability provides that:

The Company will pay on behalf of the INSURED for LOSS and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

13.     The IHIC Policy's definition of LEGAL EXPENSE states in relevant part:

LEGAL EXPENSE does not include the time and expense incurred by the INSURED in assisting the investigation or resolution of a CLAIM or in connection with REMEDIATION EXPENSE, including but not limited to the costs of the INSURED'S in-house counsel, salary charges of regular employees or

4

officials of the INSURED, and fees and expenses of supervisory counsel retained by the INSURED.

14.     Section VI. of the IHIC Policy is entitled "LIMITS OF LIABILITY AND SELF-INSURED RETENTION" and provides in relevant part:

A.      The Company will pay one hundred percent (100%) of all covered LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE and any other coverages afforded by endorsement attached to this Policy in excess of the applicable Self-Insured Retention Amount stated in Item 4. of the Declarations and subject to the Limits of Liability stated in Item 3. of the Declarations and the other terms and conditions of this Policy.

B.      The Self-Insured Retention Amount is borne by the INSURED and is not to be insured unless the Company has expressed its prior consent in writing to the FIRST NAMED INSURED. The applicable Self-Insured Retention Amount stated in Item 4. of the Declarations shall apply.

15.     Section VII. of the IHIC Policy is entitled "REPORTING, DEFENSE, SETTLEMENT AND COOPERATION." This Section provides in pertinent part:

A.      As a condition precedent to the coverage hereunder, in the event any CLAIM is made against the INSURED for LOSS or REMEDIATION EXPENSE, or any POLLUTION CONDITION is first discovered by the INSURED that results in a LOSS or REMEDIATION EXPENSE:

1.      The INSURED shall forward to the Company or to any of its authorized agents every demand, notice, summons, order or other process received by the INSURED or the INSURED's representative as soon as practicable; and

2.      The INSURED shall provide to the Company, whether orally or in writing, notice of the particulars with respect to the time, place and circumstances thereof, along with the names and addresses of the injured and of available witnesses. In the event of oral notice, the INSURED agrees to furnish to the Company a written report as soon as practicable.

16.     Section IX. of the IHIC Policy is entitled "CONDITIONS" and provides in relevant part as follows:

K.      **Jurisdiction and Venue** -- It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company and the INSURED will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be

understood to constitute a waiver of the Company's right to remove an action to the United States District Court.

L.    **Choice of Law** -- All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules.)

### The CSAC-EIA Memorandum of Coverage

17.    CSAC-EIA issued a "General Liability II Program Memorandum of Coverage" to the City of San Diego pursuant to memorandum no. EIA-PE 07 GL2-15, effective July 1, 2007 to July 1, 2008 ("CSAC-EIA MOC"). (See Exhibit B attached.)  Indian Harbor was advised that CSAC-EIA was handling the Grande North Claim (discussed below), pursuant to this Memorandum of Coverage.

18.    The CSAC-EIA MOC provides that the Member's (here, the City of San Diego's) Retained Limit is $2,000,000, with coverage afforded to the City of San Diego under a "Mega Fund Layer" of $6,000,000 and an "Excess Reinsurance Layer" of $13,000,000.  Pursuant to Endorsement No. 4, the Retained Limit was amended to $5,000,000 as of October 1, 2007.

19.    The CSAC-EIA MOC states that ICSOP provides the City of San Diego "reinsurance and excess insurance" as described in the memorandum.

### The Grande North Claim

20.    Indian Harbor is informed and believes that The Grande North at Santa Fe Place Homeowners Association ("Grande North") alleges that piping throughout its 38-story condominium building has been eroded by hydrogen sulfide gas (a natural byproduct of sewage) emanating from the City's 36" sewer main (the "Grande North Claim").  The erosion of the pipes has allegedly caused numerous plumbing and other problems through the building, which Grande North alleges requires replacement of the pipes.

21.    Indian Harbor is informed and believes that, on August 13, 2009, the City received notice of the Grande North Claim in a form filed by Grande North with the City entitled

"Claim Against the City of San Diego." The City denied the Grande North Claim on August 24, 2009.

22.     Subsequently, on or about September 9, 2009, Grande North filed the lawsuit on the Grande North Claim entitled *The Grande North at Santa Fe Place Homeowners Association v. Bosa Development California, Inc., et al.*, Case No. 37-2009-00098057, San Diego Superior Court, California, against the City and the building's developer, Bosa Development California, Inc. ("*Grande North* lawsuit"). As against the City, the complaint contains causes of action for Inverse Condemnation, Dangerous Condition, Nuisance, Trespass, and Injunctive Relief. The lawsuit seeks costs for correction of the alleged problems, damages for diminution in value, relocation costs, and certain repairs.

23.     Indian Harbor is informed and believes that the City is defending itself against the *Grande North* lawsuit through the City counsel's office.

24.     On March 26, 2012, two years and seven months after Grande North submitted the "Claim Against the City of San Diego," first notice of the Grande North Claim was provided to Indian Harbor.

25.     On April 4, 2012, Indian Harbor sent a letter to the City, acknowledging receipt of notice of the Grande North Claim, reserving rights on a variety of bases, and requesting information.

26.     After investigating the Grande North Claim and on July 27, 2012, Indian Harbor disclaimed coverage for the Grande North Claim, citing late notice of the claim, and Indian Harbor reserved the right to disclaim coverage based on other relevant Policy provisions.

### The 235 On Market Claim

27.     Indian Harbor is informed and believes that, on or about May 19, 2011, the 235 On Market Homeowners Association ("235 On Market") submitted a "Claim Against the City of

San Diego," which alleged a significant odor and corrosion problem in its building's waste and vent system directly attributable to sewer gases containing hydrogen sulfide (among other things) originating in the City sewer main (the "235 On Market Claim").  The City denied the 235 On Market Claim on June 23, 2011.  On or about September 2, 2011, 235 On Market filed a lawsuit on the 235 On Market Claim against the City and developer in the case entitled *235 On Market Homeowners Assn. v. 235 Market LLC et al.*, Case No. 37-2011-00097434, San Diego Superior Court, California ("*235 On Market* lawsuit").

28.     Indian Harbor is informed and believes that the City is defending itself against the *235 On Market* lawsuit through the City counsel's office.

29.     On May 25, 2012, over one year after 235 On Market submitted the "Claim Against the City of San Diego," first notice of the 235 On Market Claim was provided to Indian Harbor.

30.     On June 7, 2012, Indian Harbor sent a letter to the City, acknowledging receipt of notice of the 235 On Market Claim, reserving rights on a variety of bases, and requesting information.

31.     After investigating the 235 On Market Claim and on July 27, 2012, Indian Harbor disclaimed coverage for the 235 On Market Claim, citing late notice of the claim, and Indian Harbor reserved the right to disclaim coverage based on other Policy provisions.

## The Centex Claim

32.     Indian Harbor is informed and believes that, on or about April 17, 2009, Element Owners Association filed a lawsuit against Centex Homes, Centex Real Estate Corporation, Centex Construction Company, Inc. and Balfour Beatty Construction Company (collectively "Centex") and others, alleging various construction defects related to an eight-story

condominium building. This lawsuit is entitled *Element Owners Assn. v. Centex Homes et al.,*
Case No. 37-2009-00087185, San Diego Superior Court, California ("*Centex* lawsuit").

33.      Indian Harbor is informed and believes that, pursuant to the *Centex* lawsuit, on
March 28, 2012, Centex sent the City a letter that enclosed a "Claim Against the City of San
Diego" and alleged that crystallization on the building's piping was caused by hydrochloric gas
emanating from the City's sewer system (the "Centex Claim"). Indian Harbor is informed and
believes that Centex meant "hydrogen sulfide gas" instead of "hydrochloric gas." The City
formally denied the Centex Claim on May 11, 2012.

34.      Indian Harbor is informed and believes that the City is defending itself against the
Centex Claim through the City counsel's office.

35.      On May 25, 2012, almost two months after Centex submitted the "Claim Against
the City of San Diego," first notice of the Centex Claim was provided to Indian Harbor.

36.      On June 7, 2012, Indian Harbor sent a letter to the City, acknowledging receipt of
notice of the Centex Claim, reserving rights on a variety of bases, and requesting information.

37.      After investigating the Centex Claim and on July 27, 2012, Indian Harbor
disclaimed coverage for the Centex Claim, citing late notice of the claim, and Indian Harbor
reserved the right to disclaim coverage based on other Policy provisions.

### CSAC-EIA's Demand to Indian Harbor

38.      By letter dated May 3, 2013, counsel for CSAC-EIA wrote to Indian Harbor,
advising that mediation in the *Grande North* lawsuit was scheduled for May 8, 2013. CSAC-
EIA demanded that Indian Harbor attend the mediation and settle the matter on the City's behalf.

39.      In its May 3, 2013 letter, CSAC-EIA argued that Indian Harbor's disclaimer
based on late notice was improper and that the City complied with all of the IHIC Policy's terms,
which Indian Harbor disputes.

40.     CSAC-EIA advised that it may seek to recoup from Indian Harbor any amounts it has paid or may pay on behalf of the City in settlement and defense costs.

## FIRST COUNT

**(Declaratory Judgment – No Duty to CSAC-EIA or ICSOP Due To the City's Late Notice)**

41.     Indian Harbor refers to and incorporates herein by reference paragraphs 1 through 40 inclusive, as though set forth in full herein.

42.     The IHIC Policy requires as a condition precedent to coverage that the City provide Indian Harbor with notice of a Claim as soon as practicable.

43.     The City did not provide Indian Harbor with notice of the Grande North Claim, the 235 On Market Claim, or the Centex Claim (collectively "Underlying Claims") as soon as practicable.

44.     Indian Harbor contends that it has no obligation to CSAC-EIA or ICSOP with respect to the defense and indemnity of the City of San Diego in the Underlying Claims because the City failed to provide Indian Harbor with notice of the Underlying Claims as soon as practicable.

45.     An actual controversy exists between Indian Harbor, on the one hand, and CSAC-EIA and ICSOP, on the other hand, that involves the rights and obligations of Indian Harbor to CSAC-EIA or ICSOP with respect to the defense and indemnity of the City of San Diego in the Underlying Claims. This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits.

46.     Indian Harbor desires a judicial determination of its rights and duties to CSAC-EIA or ICSOP with respect to the defense and indemnity of the City of San Diego in the Underlying Claims. Specifically, Indian Harbor desires a judicial declaration that Indian Harbor had and has no duty to CSAC-EIA or ICSOP with respect to the defense and indemnity of the

City of San Diego in the Underlying Claims, or to settle such claims, due to the City's late notice of the Underlying Claims.

## PRAYER

WHEREFORE, Indian Harbor prays for judgment as follows:

1.     That this Court determine and adjudicate the rights, duties and obligations of the parties with respect to the Indian Harbor policy of insurance described in this Complaint and the Underlying Claims;

2.     On the First Count: for a judicial declaration that Indian Harbor does not have a duty to CSAC-EIA or ICSCOP with respect to the defense and indemnity of the City of San Diego in the Underlying Claims, or to settle such claims, due to the City's late notice of the Underlying Claims;

3.     For expenses and costs of suit incurred herein; and

4.     For such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 14, 2013

DUANE MORRIS LLP

Attorneys for Plaintiff Indian Harbor Insurance Company

By:     _Jessica A. Bohl_

Sheila Raftery Wiggins
Jessica A. Bohl
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
Tel. (212) 692-1000
Fax. (212) 692-1020
srwiggins@duanemorris.com
jabohl@duanemorris.com


DUANE MORRIS LLP
Attorneys for Plaintiff Indian Harbor Insurance

Company

Max H. Stern (*pro hac vice* to be submitted)
Jessica E. La Londe (*pro hac vice* to be submitted)
DUANE MORRIS LLP
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
mhstern@duanemorris.com
jelalonde@duanemorris.com